IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 02-CR-133-BR |
| Plaintiff, | (06-CV-742-BR) |
| v. | OPINION AND ORDER |
| RICHARD ALLEN SMITH, | |
| Defendant. | |

KARIN J. IMMERGUT
United States Attorney
GARY Y. SUSSMAN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1117

       Attorneys for Plaintiff

MICHELLE A. RYAN
818 S.W. Third Avenue, #168
Portland, OR  97204

       Attorney for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Richard Allen Smith's Amended Motion to Vacate, Set Aside, or Correct Sentence (#129).

For the reasons that follow, the Court **DENIES** Smith's Amended Motion to Vacate, Set Aside, or Correct Sentence.

## BACKGROUND

On December 12, 2002, Defendant was charged in a Superseding Indictment with one count of Armed Bank Robbery in violation of 18 U.S.C. § 2113(a) and (d), one count of Use of a Firearm During an Armed Robbery in violation of 18 U.S.C. § 924(c), two counts of Armed Carjacking in violation of 18 U.S.C. § 2119, two counts of Use of a Firearm During an Armed Carjacking in violation of 18 U.S.C. § 924(c), and two counts of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g) stemming from events occurring in April 2002. Defendant presented an affirmative defense of insanity.

Defendant was convicted of all eight counts of the Superseding Indictment following a six-day jury trial.

Defendant appealed his conviction on the ground that the Court erred when it refused to instruct the jury concerning the consequences of a verdict of "not guilty by reason of insanity." On January 19, 2005, the Ninth Circuit affirmed the Judgment of

Conviction:

> In *Shannon v. United States*, 512 U.S. 573 (1994), the Supreme Court held that the Insanity Defense Reform Act of 1984 did not require that jurors be instructed on the consequences of an NGI verdict. *Id.* at 580. The Court, moreover, rejected the argument that such an instruction is required as a matter of general federal criminal practice. *Id.* at 587-88. Such an instruction may be necessary only in limited circumstances as where a witness or prosecutor states in the presence of the jury that a defendant would "go free." *Id.*
>
> Nothing of the sort occurred in this case. One juror during voir dire expressed skepticism about the NGI defense but assured the court that he could be fair and impartial. The prosecutor, in opposing the NGI defense, argued that the defendant was dangerous but not insane. Ultimately the district court instructed the jury that punishment is for the court to decide and if the jury found the defendant NGI, there would be further proceedings for the court to decide. The district court did not abuse its discretion.

*United States v. Smith*, Nos. 03-30522, 03-30540, at 2 (9th Cir. Jan. 19, 2005).

On May 22, 2006, Defendant filed a Motion to Vacate, Set Aside, or Correct Sentence. On March 9, 2007, Defendant filed an Amended Motion to Vacate, Set Aside, or Correct Sentence.

## **DISCUSSION**

Defendant moves for entry of an order vacating or setting aside his sentence on the grounds that his rights to due process were violated by prosecutorial misconduct during closing argument and that he did not receive effective assistance of counsel in

violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

## I. Prosecutorial Misconduct

Defendant contends his right to due process was violated by the prosecutor's misconduct during closing argument. Specifically, Defendant contends the prosecutor made a statement suggesting Defendant would not be held accountable for his crimes if he was successful in his insanity defense, and the prosecutor repeatedly referred to Defendant as "dangerous."

### A. Standards

"The appropriate standard of review for [a claim of prosecutorial misconduct] on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). "It is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quotation omitted).

"Both prosecuting attorneys and defense attorneys are allowed reasonably wide latitude in closing arguments and may strike hard blows based on the evidence and reasonable inferences from the evidence." *United States v. Vaccaro*, 816 F.2d 443, 451

4 - OPINION AND ORDER

(9th Cir. 1987), *abrogated on other grounds by Huddleston v. United States*, 485 U.S. 681 (1988).

## B. Analysis

Defendant objects to the fact that the prosecutor referred to him as "dangerous" several times during the course of closing argument. Defendant also objects to the following statement made by the prosecutor during the course of closing argument:

> But, still, [Defendant] wants you to excuse him. He doesn't want to be held responsible for his conduct. He doesn't want to be held accountable for his criminal actions. He wants you to find him not guilty by reason of insanity.

Pl.'s Ex. B at 4. According to Defendant, the prosecutor's references to Defendant as dangerous were calculated to arouse the passions or prejudices of the jury. Defendant contends the prosecutor's statement that Defendant wanted the jury to "excuse him" also "crossed the line of fairness" because it suggested if the jury rendered a verdict of not guilty by reason of insanity, the jury would not be holding Defendant accountable for his crimes.

The government asserts the prosecutor's statements that Defendant is dangerous were "part and parcel" of the prosecutor's argument that Defendant was not legally insane. In addition, each time before the prosecutor stated Defendant was dangerous, the prosecutor recapped Defendant's actions as established by the

5 - OPINION AND ORDER

evidence and asked the jury to consider whether they were the actions or thoughts of an individual who was legally insane as defined by the Court in its instructions.

With respect to the prosecutor's comment that Defendant was asking the jury to "excuse" him, the government notes the statement objected to by Defendant was preceded by a recitation of the evidence and followed by the prosecutor's explanation:

> But before you can do that, he has to prove to you by clear and convincing evidence, first, that he suffered from a severe mental disease or defect. And, second, as a result, he was unable to appreciate either the nature and quality or the wrongfulness of his acts. And that, members of the jury, he has not done. That, he cannot do.

According to the government, the prosecutor's statement was a preamble to a detailed rebuttal of Defendant's insanity defense and did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." The government cites *Darden* and *Comer v. Schriro*, 463 F.3d 934 (9th Cir. 2001), to support its assertions.

In *Darden*, the petitioner brought a petition for habeas-corpus relief alleging, among other things, that several statements made by the prosecutor during closing argument rendered the trial fundamentally unfair in violation of the petitioner's right to due process. 477 U.S. at 170-71. During closing argument, the prosecutor referred to the petitioner as an "animal." *Id*. at 181. The prosecutor also stated the petitioner

6 - OPINION AND ORDER

"shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash." *Id.* at 181, n.12. The prosecutor further stated:

> I wish [the victim] had had a shotgun in his hand when he walked in the back door and blown [the petitioner's] face off. I wish that I could see [the petitioner] sitting here with no face, blown away by a shotgun. I wish someone had walked in the back door and blown [the petitioner's] head off at that point. [The petitioner] fired in the boy's back, number five, saving one. Didn't get a chance to use it. I wish [the petitioner] had used it on himself. I wish [the petitioner] had been killed in the accident, but [the petitioner] wasn't. Again, we are unlucky that time. [D]on't forget what [the petitioner] has done according to those witnesses, to make every attempt to change his appearance from September the 8th, 1973. The hair, the goatee, even the moustache and the weight. The only thing [the petitioner] hasn't done that I know of is cut his throat.

*Id.* Finally, the prosecutor asked the jury "to advise the Court to give [the petitioner] death. That's the only way that I know he is not going to get out on [*sic*] the public. . . . It's the only way I can be sure of it. It's the only way that anybody can be sure of it now because the [department of corrections] turned [the petitioner] loose." *Id.* at 181, n.10. The Supreme Court noted the prosecutor's comments "undoubtedly were improper." *Id.* at 180. Nevertheless, the Court concluded these comments did not deprive the petitioner of a fair trial. *Id.* at 181. The Court reasoned the prosecutor's argument "did not manipulate or

7 - OPINION AND ORDER

misstate the evidence." *Id.* In addition,

> [t]he trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence. The weight of the evidence against petitioner was heavy; the overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges reduced the likelihood that the jury's decision was influenced by argument.

*Id.* at 182 (quotation omitted).

In *Comer*, the petitioner sought habeas-corpus relief alleging, among other things, the prosecutor engaged in misconduct in violation of the petitioner's right to due process when the prosecutor used "dehumanizing epithets" during closing argument and "impermissibly appealed to the passion and prejudice of the jury." 463 F.3d at 960. During closing argument, the prosecutor repeatedly referred to the petitioner as a "monster" and "filth," likened his crimes to a horror movie, and called the petitioner a "reincarnation of the devil." *Id.* The Ninth Circuit condemned the prosecutor's remarks, but concluded they "did not render [the petitioner's] trial fundamentally unfair" and "reject[ed] [the petitioner's] contention that these remarks were an impermissible appeal to the passion and prejudice of the jury." *Id.* at 960-61. The Ninth Circuit reasoned:

> [The] prosecutor did not misstate or manipulate any evidence in making his objectionable remarks. The trial court also instructed the jurors that their decision was to be based only on the evidence produced in

> court, with evidence defined as witness testimony and exhibits. The jurors were specifically admonished that the lawyers' statements during opening and closing argument were not evidence. Furthermore, they were instructed not to be "influenced by sympathy or prejudice." And during his closing statement, the prosecutor warned the jurors that his statements, and those of defense counsel, were not "proof." These admonishments and instructions significantly limited any prejudice caused by the prosecutor's remarks.
>
> Additionally . . . any emotional impact that the prosecutor's statements may have had on the jury likely only replicated the impact of earlier eyewitness testimony from the victims. *See Fields v. Woodford*, 309 F.3d at 1109 ("[G]iven the eyewitness testimony about what [the defendant] did to [the victim], there is no reasonable probability that the prosecutor's emotional appeal affected the verdict.").

*Id.* at 960-61.

Here although the prosecutor's statement about excusing Defendant's conduct standing alone might suggest Defendant would not be held accountable for his actions if the jury found him not guilty by reason of insanity, the prosecutor immediately afterwards reminded the jury that they could not make such a finding unless Defendant proved by clear and convincing evidence that he suffered from a severe mental disease or defect and, as a result, that he was unable to appreciate either the nature and quality or the wrongfulness of his acts. Moreover, the prosecutor's reference to Defendant as "dangerous" merely replicated the impact of earlier eyewitness testimony from the

9 - OPINION AND ORDER

victims. In any event, the prosecutor's remarks here were far less objectionable than those made in *Darden* and *Comer*.

In addition, here the Court instructed the jury that they were to consider "only the testimony and exhibits" and any stipulated facts. The Court informed the jury that arguments and statements by the lawyers "are not evidence, and you may not consider them in deciding what the facts are." The Court added:

> The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times during the trial is intended to help you interpret the evidence, but it is not evidence. If you remember the facts differently from the way the lawyers state them, your memory of the evidence controls.

Finally, the Court instructed the jury that if they returned a verdict of not guilty by reason of insanity, "the law provides for further proceedings . . . for the Court to decide." As in *Darden* and *Comer*, the Court's instructions neutralized any prejudicial effect the prosecutor's statements may have had.

Accordingly, the Court concludes the prosecutors' comments did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."

## II. Ineffective Assistance of Counsel

Defendant contends he did not receive effective assistance of counsel because (1) trial counsel "failed to object to, request cautionary instructions, move for a mistrial, and preserve for appeal the issue of prosecutorial misconduct during

10 - OPINION AND ORDER

closing argument" and (2) trial counsel failed to request a new jury panel when, during voir dire, juror Brooks Burford contaminated the jury panel.

**A.     Standards**

The Supreme Court has established a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 678, 687 (1984). Under this test, a defendant must not only prove counsel's assistance was deficient, but also that the deficient performance prejudiced the defense. *Id.* *See also Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir.), *cert. denied*, 513 U.S. 1001 (1994); *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir.) (en banc), *cert. denied*, 511 U.S. 119 (1994); *Mak v. Blodgett*, 970 F.2d 614, 618 (9th Cir. 1992), *cert. denied*, 507 U.S. 951 (1993).

"To prove deficiency of performance, the defendant must show counsel made errors so serious that performance fell below an objective standard of reasonableness under prevailing professional norms." *Mak*, 970 F.2d at 618 (citing *Strickland*, 466 U.S. at 687-88)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688. There is a strong presumption that counsel's assistance was adequate. *Id.* at 689.

11 - OPINION AND ORDER

To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *See also United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996), *cert. denied*, 520 U.S. 1269 (1997). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695.

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

**B.  Analysis**

    **1.  Defendant's Claim for Failure to Object to Prosecutorial Misconduct**

Defendant alleges he received ineffective assistance of counsel because trial counsel "failed to object to, request cautionary instructions, move for a mistrial, and preserve for appeal the issue of prosecutorial misconduct during closing argument." Because the Court concludes there was not any prosecutorial misconduct, the Court denies Defendant's claim of ineffective assistance of counsel on this basis.

### 2. Defendant's Claim for Failure to Request a New Jury Panel

Defendant contends he received ineffective assistance of counsel because trial counsel failed to request a new jury panel when, during voir dire, juror Brooks Burford contaminated the jury panel. To support his claim, Defendant relies on *Mach v. Stewart*, 167 F.3d 630 (9th Cir. 1997).

In *Mach*, the petitioner was charged with sexual conduct with a minor under 14 years old. 167 F.3d at 631. The victim was an eight-year-old girl who claimed the petitioner had performed an act of oral sex on her while she was at the petitioner's home visiting his daughter. *Id*. The first prospective juror questioned during voir dire, Ms. Bodkin, was a social worker with the State of Arizona Child Protective Services. *Id*. at 631-32. Bodkin stated she would have difficulty being impartial because "sexual assault had been confirmed in every case in which one of her clients reported such an assault." *Id*. at 632. After further questioning, Bodkin stated at least three more times "that she had never, in three years in her position, become aware of a case in which a child had lied about being sexually assaulted." *Id*. Bodkin also stated she had taken courses on adult and child psychology and "worked extensively with psychologists and psychiatrists." *Id*. Ultimately the trial court struck Bodkin for cause, but the petitioner moved for a mistrial on the ground that Bodkin's

13 - OPINION AND ORDER

statements had tainted the entire jury panel. *Id.* The trial court denied the motion for mistrial. *Id.* The petitioner filed for habeas-corpus relief on the ground that the failure to grant a mistrial denied him the right to a fair trial in violation of the Sixth Amendment. *Id.* The Ninth Circuit reversed the district court's dismissal of the petition for writ of habeas corpus and remanded to the trial court to vacate the conviction on the ground that "the jury was tainted in violation of [the petitioner's] sixth amendment right to an unbiased jury and . . . that taint substantially affected the jury's verdict." *Id.* at 634. In reaching their conclusion, the Ninth Circuit reasoned:

> Given the nature of Bodkin's statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated, we presume that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused. This bias violated Mach's right to an impartial jury.
>
> \* \* \*
>
> [In addition], [t]he extrinsic evidence was highly inflammatory and directly connected to Mach's guilt. Bodkin repeatedly stated that in her experience as a social worker, children never lied about sexual assault. The bulk of the prosecution's case consisted of a child's testimony that Mach had sexually assaulted her. We thus find Bodkin's statements to have substantially affected or influenced the verdict and therefore reverse the conviction.

*Id.* at 633-43.

Here a potential juror, Brooks Burford, expressed concern about the defense of not guilty by reason of insanity during voir dire. Burford stated:

> In 1972 my cousin Greg shot and killed his wife and their young daughter in Liberty, Washington, outside of CleElum [sic]. He was found not guilty by reason of insanity, by a Jury in Kittitas [sic] County. I'm skeptical of the defense, because I knew his character. He was sent to Medical Lake, treated, and released into the community a few years later. There hasn't been any conflict with the community since, but I am skeptical of the defense because I know his character.

Gov.'s Resp. to Mot. to Vacate, Ex. A at 10. Upon further questioning, the Court reminded Burford that it was not his cousin at issue in this trial and asked Burford whether he could follow the law as directed in this case. Burford responded, "I'm skeptical of the defense of - - of an insanity defense. Skeptical, but certainly could not rule it out if it could be clinically proven in court." *Id.* at 10-11. The Court informed Burford that "[t]his case obviously has to rise and fall on its merits. . . . And obviously there's going to have to be some evidence presented before I would even allow the jury to consider the defense." Burford then informed the Court that he could judge the matter impartially. Burford was ultimately removed on a peremptory challenge.

Unlike the prospective juror in *Mach*, Burford did not present himself as an expert nor did he deliver his concerns

15 - OPINION AND ORDER

about the defense in this case with certainty.  Burford also did not repeat numerous times his inability to believe Defendant's defense of insanity would ever apply in this kind of trial.

In addition, Defendant's trial counsel submitted an Affidavit in which he testified:

> I did not move for a mistrial.  I had submitted to the Court a requested special jury instruction on the meaning of a result of a not-guilty-by-reason-of-insanity verdict.  This instruction was filed pursuant to the Court's pretrial scheduling order approximately one week prior to trial.  Given the overwhelming weight of evidence against Mr. Smith and the violent nature of the charges against him, I felt it was important to have the jury instructed that if he was found not guilty only by reason of insanity, there would be further proceedings before this Court in that, if the jury found Mr. Smith not guilty only by reason of insanity, he would not be released into the community unless the Court determined by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage to property of another due to the present mental disease or defect.
>
> * * *
>
> Rather than move for mistrial, I felt the voir dire questioning of the particular juror would assist in my goal of having the special instruction given to the jury.

Needham Aff. ¶¶ 13, 14.  The Ninth Circuit accords counsel wide latitude in formulating trial tactics and strategy.  *See, e.g., Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995)("Tactical decisions that are not objectively unreasonable do not constitute

ineffective assistance of counsel."). In addition, the Supreme Court has concluded "[counsel's] strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Here trial counsel made a tactical decision not to seek a mistrial and instead to seek a jury instruction on the insanity defense. The Court concludes trial counsel's tactical decision was not unreasonable in light of the general nature of Burford's comments during voir dire and the Court's curative statements to Burford about deciding this case on its merits and requiring evidence of insanity before allowing the defense to go to the jury. In other words, trial counsel's performance did not fall "below an objective standard of reasonableness under prevailing professional norms."

Accordingly, the Court denies Defendant's claim of ineffective assistance of counsel.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Amended

Motion to Vacate, Set Aside, or Correct Sentence (#129).

IT IS SO ORDERED.

DATED this 1st day of October, 2007.

                                             *[signature]*
                                       ANNA J. BROWN
                                       United States District Judge